18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 MICHAEL DAVIS,
D-2 RACHELLE PRITCHARD,

Defendants.

Case: 2:25-cr-20777
Assigned To : Lawson, David M.
Referral Judge: Altman, Kimberly G.
Assign. Date : 10/15/2025
Description: IND USA V. DAVIS ET AL (AB)

Violations: 18 U.S.C. § 1349
18 U.S.C. § 1028A
18 U.S.C. § 1343

# INDICTMENT

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

At times relevant to this Indictment:

### Pandemic Unemployment Insurance Relief

1. The Social Security Act of 1935 initiated the federal and state unemployment insurance (UI) system. The system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the UI system is twofold: first, to lessen the effects of unemployment through cash payments made directly to laid-off workers, and second, to ensure that life necessities are met on a weekly basis while the worker seeks employment. In Michigan, the UI

system is administered by the Michigan Unemployment Insurance Agency (MUIA), which is part of the Michigan Department of Labor and Economic Opportunity. Other States administer their UI programs through similar state-run agencies. Regardless of the state, the U.S. Department of Labor funds each of the respective state agency's administrative costs, including salaries, office expenses, and computer equipment.

2. State unemployment systems and benefits are largely financed by taxes on private employers located in that state. When state unemployment benefits are exhausted, they may be supplemented by federal funds appropriated by the U.S. Department of Labor. At times relevant to this indictment, the federal government was providing significant supplemental benefits to the states as a result of the COVID-19 pandemic.

3. Beginning in or about March 2020 and continuing through approximately September 2021, the Families First Coronavirus Response Act (FFCRA); Coronavirus Aid, Relief, and Economic Security (CARES) Act; and American Rescue Plan Act of 2021 (ARPA) created federal programs that allowed for the significant outlay of

federal funds flowing to and through the states to offset the historic need for unemployment benefits by the American workforce, including in the State of Michigan and in the Eastern District of Michigan. Collectively, these benefits are often referred to as Pandemic Unemployment Assistance (PUA).

4. Normally, in the absence of fraud, an unemployed worker initiates a UI claim in person, over the telephone, or on the Internet. The overwhelming majority of UI claims are filed online through a state website. In order to be eligible for UI benefits, the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application. The amount of unemployment benefits that a UI claimant might be eligible for depends on a variety of factors, including but not limited to the length of his or her previous employment and the amount of wages he or she earned.

5. The state agency would either approve or reject a UI claim based on the application made by the unemployed worker. If the state agency approves a UI claim, the claimant is required to re-certify the claim via telephone or Internet at various times during the life of the claim.

The worker must also certify that he or she is still unemployed and actively seeking work.

6. One way in which the State of Michigan provided unemployment benefits to a claimant was through the use of a debit card, issued by Bank of America, which was mailed to the claimant through the U.S. Postal Service. The unemployment benefits were loaded onto the debit card electronically. Alternatively, a claimant could provide a bank routing number and bank account, and Bank of America would deposit their unemployment benefits directly. In either case, additional benefits were loaded electronically by Bank of America at intervals thereafter.

7. The Bank of America centers used to process Michigan's UI claims were located in Virginia and Colorado, so claims filed in Michigan would result in interstate wire transmissions from the state of Michigan to the states of Virginia or Colorado to initiate payment of benefits.

8. In an effort to prevent and otherwise inhibit fraud, the state agencies captured certain data surrounding the interaction between an individual and the UI system. Although states utilized their own

unique systems, many times the data that was collected included the dates, times, and IP address associated with a device accessing a claim. The state systems tied this information to the user-entered information captured to facilitate the claim (i.e., name, address, social security number, Bank of America or other bank account numbers, bank routing numbers, etc.).

## Employee Retention Credits

9. Another form of relief offered by the federal government following the outbreak of the COVID-19 pandemic involved statutes authorizing the Internal Revenue Service (IRS) to reduce the employment tax burdens of small businesses and reimburse those businesses for wages paid to employees who could not work because of the pandemic (to incentivize retaining employees on their payrolls). For tax periods in 2020 and 2021, the IRS offered the Employee Retention Credit (ERC) to businesses that were significantly impacted by the pandemic—up to $5,000 per employee per quarter in 2020, and up to $7,000 per employee per quarter in 2021.

10. To be qualified, employers needed to, among other things, provide proof that their business was operational during the COVID-19

pandemic and had maintained employees and paid Form W-2 wages to employees throughout the pandemic. One way a business could apply for ERC funds was by submitting a Form 941-X to the IRS. Form 941-X is a federal tax form used to amend Form 941 (Employer's Quarterly Federal Income Tax Return – reporting certain information, including the number of employees working at the business and the wages paid by the business, and the federal income taxes withheld from employee wages).

**The Defendants**

11. Defendant MICHAEL DAVIS was a resident of the Eastern District of Michigan. Among other entities, DAVIS owned and controlled LE IVY LLC, a Michigan corporation, which was purportedly in the restaurant/lounge industry. Davis enlisted the assistance of ERC Specialists, a Utah corporation, which provided tax services related to the Employee Retention Credit program. ERC Specialists is located in the State of Utah, and utilizes a cloud-based workflow for their Online portal (managed by Google, which does not maintain servers in the State of Michigan). ERC Specialists further

utilizes DocuSign, which also does not maintain servers in the State of Michigan, to obtain electronic signatures.

12. Defendant RACHELLE PRITCHARD was a resident of the Eastern District of Michigan.

**COUNT ONE**
18 U.S.C. § 1349
*Conspiracy to Commit Wire Fraud*

D-1 MICHAEL DAVIS
D-2 RACHELLE PRITCHARD

13. Paragraphs 1 through 8 and 11 through 12 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

14. From on or about March 2020, through on or about July 2021, in the Eastern District of Michigan, the defendants, MICHAEL DAVIS and RACHELLE PRITCHARD did knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other to commit wire fraud, that is, knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the

purposes of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

**Purpose of the Conspiracy**

15. The purpose of the conspiracy was for the defendants to obtain money by, among other things, submitting fraudulent PUA claims, and to use proceeds obtained through these fraudulent submissions to enrich themselves.

**Manner and Means**

16. The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things, the following:

17. The defendants would acquire the names, social security numbers, and other personal identifying information (collectively PII) of individuals, without their knowledge or consent.

18. The defendants would use this information to submit false and fraudulent claims to the MUIA seeking PUA benefits in the names of these individuals, who did not know of or consent to the submissions.

19. When claims for PUA benefits were approved, the defendants would periodically recertify that these individuals were eligible for PUA benefits, in order to continue to capture PUA funds.

20. The defendants would direct that funds from the false and fraudulent PUA claims be provided to members of the conspiracy in one of several ways. Often, PUA benefits were loaded onto debit cards that would be sent to addresses accessible to the defendants, who could then secure the cards. PUA benefits were also wired to bank accounts controlled by the defendants.

21. Once the proceeds of the fraud were obtained by the defendants, the defendants would withdraw or transfer the funds for their own benefit.

22. In total, the defendants obtained approximately $1.9 million in fraudulently obtained PUA benefits.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO, THREE, AND FOUR

18 U.S.C. § 1028A

*Aggravated Identity Theft*

D-1 MICHAEL DAVIS

23. On or about the dates set forth below, in the Eastern District of Michigan, the defendant, MICHAEL DAVIS, did knowingly transfer, possess, or use without lawful authority, a means of identification of another person, including, but not limited to, a bank debit card issued in the name of another person that was possessed unlawfully, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person, all in violation of Title 18, United States Code, Section 1028A(a)(1), with each date constituting a separate count of this Indictment.

| Count | Person Whose Identification Was Used | Approximate Date(s) |
|---|---|---|
| 2 | M.L. | July 6, 2020<br>July 7, 2020 |
| 3 | S.T. | October 21, 2020 |
| 4 | A.M. | November 18, 2020 |

## COUNTS FIVE, SIX, AND SEVEN

18 U.S.C. § 1028A

*Aggravated Identity Theft*

D-2 RACHELLE PRITCHARD

24. On or about the dates set forth below, in the Eastern District of Michigan, the defendant, RACHELLE PRITCHARD, did knowingly transfer, possess, or use without lawful authority, a means of identification of another person, including, but not limited to, a bank debit card issued in the name of another person that was possessed unlawfully, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person, all in violation of Title 18, United States Code, Section 1028A(a)(1), with each date constituting a separate count of this Indictment.

| **Count** | **Person Whose Identification Was Used** | **Approximate Date(s)** |
|---|---|---|
| 5 | A.D. | July 26, 2020 |
| 6 | D.H. | July 26, 2020 |
| 7 | S.K. | July 26, 2020 |

## COUNTS EIGHT, NINE, AND TEN

18 U.S.C. § 1343
*Wire Fraud*

D-1 MICHAEL DAVIS

25. Paragraphs 9 through 12 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

26. From on or about October 2022, through on or about January 2024, in the Eastern District of Michigan, the defendant, MICHAEL DAVIS, devised and intended to devise a scheme to defraud the United States, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, that is pretenses, representations, and promises that he was entitled to claim Employee Retention Credit for the business LE IVY LLC, and for the purpose of executing the fraud, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, all in violation of Title 18, United States Code, Section 1343, with each date constituting a separate count of this Indictment.

27. As part of the scheme, the defendant retained the services of ERC Specialists to submit a claim on his behalf for the Employee Retention Credit for LE IVY LLC.

28. In order to facilitate the scheme, the defendant provided ERC Specialists with materially fraudulent information regarding LE IVY LLC's operation and number of employees maintained during the pandemic. This fraudulent information included falsified tax forms and fictitious payroll journals, which the defendant submitted electronically to ERC Specialists. Some of the fraudulent information submitted included PII of individuals, used without their knowledge or consent.

29. After receiving the fraudulent information, ERC Specialists prepared Forms 941-X for LE IVY LLC and sent them to the defendant for his review and signature. The defendant electronically signed each of the forms (via DocuSign), which were then submitted to the IRS by ERC Specialists.

30. The defendant received the proceeds of the fraud scheme in the form of checks from the U.S. Department of the Treasury, which he

used for his own benefit. In total, the defendant obtained over $300,000 of Employee Retention Credit for LE IVY LLC.

| Count | Transmission | Transmission Date |
|---|---|---|
| 8 | Online application to ERC Specialists containing false claims that LE IVY LLC was operational and maintained a certain number of employees during the relevant time period | October 3, 2022 |
| 9 | Online submission of fraudulent payroll journals to ERC Specialists | October 4, 2022 |
| 10 | Online submission of fraudulent Forms 941-X to ERC Specialists via DocuSign | October 19, 2022 |

## FORFEITURE ALLEGATIONS

31. Pursuant to Fed. R. Cr. P. 32.2(a), the government hereby provides notice to the defendants of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set for in this Indictment.

32. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of Defendants:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

THIS IS A TRUE BILL

*s/Grand Jury Foreperson*
Grand Jury Foreperson

JEROME F. GORGON JR.
United States Attorney

*s/John K. Neal*
John K. Neal
Assistant United States Attorney
Chief, Anti-Corruption Crime Unit
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9644
john.neal@usdoj.gov

*s/Alyse Wu*
Alyse Wu
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9589
alyse.wu@usdoj.gov

Dated: October 15, 2025

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | **Case Number** |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ **Yes** ☒ **No** | **AUSA's Initials:** AW |

**Case Title:** USA v. D-1 Michael Davis, D-2 Rachelle Pritchard

**County where offense occurred :** Oakland

**Check One:** ☒ **Felony** ☐ **Misdemeanor** ☐ **Petty**

____Indictment/____Information — no prior complaint.
_✓_Indictment/____Information — based upon prior complaint [**Case number:** 24-mj-30496 ]
____Indictment/____Information — based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information

**Superseding to Case No:** ______________ **Judge:** ______________

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

October 15, 2025
Date

s/Alyse Wu

Alyse Wu
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9589
Fax: (313) 226-2873
E-Mail address: alyse.wu@usdoj.gov
Attorney Bar #:

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.